UNITED STATES, Appellee,

v.

Daniel A. SANFORD, Specialist Four,
U.S. Army, Appellant.

No. 62,133.
CM 8800258.

U.S. Court of Military Appeals.

Feb. 26, 1990.

For Appellant: *Captain Gregory A. Gross* (argued); *Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Captain Keith W. Sickendick* (on brief).

For Appellee: *Captain Marcus A. Brinks* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Kathryn F. Forrester* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant pleaded guilty, at Baumholder, Federal Republic of Germany, to two specifications of distributing hashish and one specification each of possessing hashish with intent to distribute, possessing amphetamines with intent to distribute, violating a general regulation by wrongfully possessing drug paraphernalia, and breaking restriction—violations of Articles 112a, 92, and 134, Uniform Code of Military Justice,

10 USC §§ 912a, 892, and 934, respectively. A military judge, sitting alone as a general court-martial, sentenced appellant to a dishonorable discharge, confinement for 54 months, total forfeitures, and reduction to E–1. The convening authority approved this result. In an unpublished opinion, the Court of Military Review consolidated the two possession-with-intent-to-distribute specifications, but otherwise affirmed the findings and sentence.

We granted this issue for review:

WHETHER THE MILITARY JUDGE ERRED IN VIOLATION OF RULE FOR COURTS–MARTIAL 1001(b)(4) BY ADMITTING, OVER DEFENSE OBJECTION, THE TESTIMONY OF APPELLANT'S BATTALION COMMANDER AS TO THE SCOPE OF THE DRUG ABUSE PROBLEM IN THE BATTALION AND THE DANGER POSED BY USE OF DRUGS WHERE THE CHARGED OFFENSES DO NOT INVOLVE USE OF DRUGS OR DISTRIBUTION OF DRUGS TO MEMBERS OF THAT UNIT.

Appellant's battalion commander, Lieutenant Colonel Robert J. Wrentmore, testified as a prosecution witness in aggravation of sentence. He described the mission of the unit (an "Engineer Combat Heavy Battalion") and the type of equipment used by the battalion. He also indicated that he had, in his unit, "more serious [drug] problems than any other battalion on post."

Asked "what unique duties ... [his] battalion perform[ed] ... that could expose it to this type of problem," Colonel Wrentmore responded:

Basically we are TDY in seven months of the year. And of that time, a majority of each of the line companies ... [are] TDY and unfortunately we spend a great deal of our time in places like ... and that puts the soldiers into areas w[h]ere drug trafficking is pretty prevalent.

The witness went on to describe how dangerous it would be for any member of his unit to operate the equipment—either in peacetime or in combat—if the operator was impaired due to the use of drugs.

On cross-examination, defense counsel asked the commander several questions pertaining to whether, in his view, "the drug problem in the military mirror[ed] the drug problem in the civilian community?" and whether the "military drug problem is a part of young people getting into drugs before they [be]come involved in the military?" To both lines of questions, the commander answered affirmatively.

On redirect examination, the commander was permitted to opine, over defense objection, that military drug offenses should be punished more severely than civilian offenses because, in the witness' view,

we have a fairly unique and exceedingly difficult mission to accomplish. I think that it requires that servicemembers who stand up and take an oath to the Constitution of the United States have an obligation above and beyond that of most citizens of the United States to abide by the laws that we are commonly put. I believe that any soldier who having taken that commission oath or that enlisted oath accepted the responsibilities that goes [sic] along with defending the Constitution of the United States. It poses a little more and when he fails to live up to his obligations, I believe he should pay more.

On appeal, appellant complains that Colonel Wrentmore's testimony was improperly received as evidence in aggravation of sentence under RCM 1001(b)(4), Manual for Courts–Martial, United States, 1984. That rule provides, in pertinent part:

The trial counsel may present evidence as to any aggravating circumstances *directly relating to or resulting from the offenses of which the accused has been found guilty.*

(Emphasis added.)

██ We make several observations. First, for the most part, the testimony was self-evident. We can see nothing in it that a military judge would have found surprising or unusual. In addition, the testimony was cumulative to other evidence that was before the court-martial without defense

objection. Therefore, whatever its appropriateness, the testimony was nonprejudicial as to sentence. Art. 59(a), UCMJ, 10 USC § 859(a).

If, indeed, the purpose of the testimony was to show the impact of appellant's conduct on the unit, it tended to have the opposite effect. *See generally United States v. Pearson*, 17 MJ 149 (CMA 1984). If anything, it showed that unit members could obtain drugs from a wide variety of sources and locations having nothing to do with appellant.

 If the purpose of the testimony was to describe the nature of the unit, the battalion commander's presence was overkill; any noncommissioned officer or junior commissioned officer would have sufficed. Though less blatant than other forms of command influence, *see, e.g., United States v. Cruz*, 20 MJ 873 (ACMR 1985), *reversed in part*, 25 MJ 326 (CMA 1987), the practical effect of edifying a court-martial with a commander's general views can be the same.

 Further, it is not clear to us that the defense, in suggesting a linkage between the drug phenomenon in civilian and military society, was necessarily implying that punishments should be the same. We are not persuaded that a sufficient showing was made to open the door for the commander's view of the severity of drug offenses in the military. RCM 1001(d). *Cf. United States v. Ohrt*, 28 MJ 301 (CMA

1989); *United States v. Horner*, 22 MJ 294 (CMA 1986).

In sum, that part of the commander's testimony that was not itself objectionable was so minimally probative that it should have been excluded under RCM 403. Nevertheless, as the case was tried by military judge alone, and given the nature and seriousness of the offenses and the other evidence before the court-martial, we perceive no danger in this case of prejudice on sentence.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

SULLIVAN, Judge (concurring in the result):

I would hold that Lieutenant Colonel Wrentmore's testimony on the impact of the drug problem on his unit was admissible under RCM 1001(b)(4), Manual for Courts–Martial, United States, 1984, and *United States v. Fontenot*, 29 MJ 244, 251 (CMA 1989). Moreover, a sufficient factual basis was provided in the stipulation of fact and in the witness' trial testimony for his opinion on the military impact of these offenses. Finally, I do not believe *United States v. Ohrt*, 28 MJ 301 (CMA 1989), and *United States v. Horner*, 22 MJ 294 (CMA 1986), provide sufficient guidance to resolve this case.