UNITED STATES

v.

Technical Sergeant Norvell ST. ROMAIN, FR434–88–8215, United States Air Force.

ACM 28985.

U.S. Air Force Court of Military Review.

Sentence Adjudged 31 Aug. 1990.

Decided 6 Sept. 1991.

**690**

Appellate Counsel for the Appellant: Lieutenant Colonel Jeffrey R. Owens and Captain Beverly B. Knott.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, and Major Morris D. Davis.

Before LEONARD, RIVES and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

LEONARD, Senior Judge:

Officer and enlisted court members convicted Technical Sergeant Norvell St. Romain of use of cocaine discovered by urinalysis. They sentenced him to a bad conduct discharge and reduction to E–1; however, the convening authority commuted his bad conduct discharge to 12 months confinement. Appellant contends that the military judge erred by allowing, over defense objection, his commander and first sergeant to testify that they did not want him back in their unit. We agree, but find that the convening authority's action obviated the need for any sentence relief.

After the court members found appellant guilty, the military judge conducted a session outside their presence to discuss potential sentencing evidence. At that time, the defense counsel informed the military judge that he strenuously objected to expected testimony by appellant's commander and first sergeant that they did not want appellant back in their unit.

The defense counsel's objection was twofold. First, counsel maintained that both proposed witnesses' previous contacts with appellant were not sufficient to allow them to testify as to his rehabilitation potential. Second, the defense argued that asking the commander and first sergeant if they wanted appellant back in their unit was a disguised means of asking whether appellant should be given a punitive discharge.

The trial counsel responded that the witnesses did not require "intense knowledge" of appellant because they were not testifying about appellant's rehabilitation potential. *See* R.C.M. 1001(b)(5). Relying on *United States v. Murphy*, 29 M.J. 573 (A.F.C.M.R.1989), he argued that whether the commander and first sergeant wanted the appellant back in the unit was not a matter of rehabilitation, but a question of impact of the conviction.

The military judge, apparently accepting the trial counsel's interpretation of *Murphy*, overruled trial defense counsel's objection and allowed both witnesses to testify.

Appellant's first sergeant, Master Sergeant Berg, testified that he had been the first sergeant for only a few months and he did not know appellant before the report of his positive urinalysis. After the report, appellant worked under Berg's direct supervision until his trial. Berg had reviewed appellant's airman performance reports and his unit personnel information file and was generally familiar with appellant's background. He also acknowledged that he was aware appellant had been convicted of wrongful use of cocaine. When asked if he wanted appellant back in his unit, he replied: "On the guilty results, no."

During cross-examination, Sergeant Berg admitted that he did not know appellant very well and that everything he knew was derogatory information that came to his attention because of appellant's positive urinalysis. He also admitted that the real reason he did not want appellant in his unit was because he was a cocaine user.

Appellant's commander, Major Hall, testified that appellant was a member of his squadron and he had reviewed appellant's performance reports and unit personnel information file. He had not talked with any of appellant's supervisors. His only conversations with appellant were an occasional "hello" or inquiry as to "how things were going." He was aware of appellant's conviction for use of cocaine and, based on

the impact this conviction would have on the discipline and efficiency of his unit, he did not want appellant back in the unit.

Upon cross-examination, Major Hall stated he did not want appellant back in his unit because of the cocaine use and appellant's prior performance as a supervisor.

R.C.M. 1001(b)(5) permits the government to introduce, through opinion testimony, evidence of an accused's "rehabilitative potential." However, a number of recent decisions of our senior court have severely limited the government's ability to present such evidence.

In *United States v. Horner*, 22 M.J. 294 (C.M.A.1986), the Court held R.C.M. 1001(b)(5) rehabilitative potential opinions must be based on an individual assessment of a service member's character and potential. *United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989) requires that a commander providing such an "individual assessment" must show a proper foundation for his opinion. This foundation requires "sufficient information and knowledge about the accused—his character, his performance of duty as a service member, his moral fiber, and his determination to be rehabilitated—to give a 'rationally based' opinion." *Id.* at 304.

*Horner* and its progeny also established that a commander's opinion on rehabilitative potential cannot rely solely on the severity of the offenses or the type of offenses committed by the accused. *United States v. Cherry*, 31 M.J. 1, 5 (C.M.A.1990); *United States v. Kirk*, 31 M.J. 84, 88 (C.M.A.1990); *Horner*, 22 M.J. at 296. Such an opinion is not helpful to a court-martial within the meaning of Mil.R.Evid. 701, because it provides no rational insight into an individual's personal circumstances. *Kirk*, 31 M.J. at 88.

Both *Horner* and *Ohrt* further specify that a commander cannot recommend a particular sentence to a court-martial or "employ euphemisms in his testimony which ineluctably lead to the same result" or which "impliedly advocated separation from the service." *Kirk*, 31 M.J. at 89; *Cherry*, 31 M.J. at 5; *See United States v. Antonitis*, 29 M.J. 217, 220 (C.M.A.1989);

*Ohrt*, 28 M.J. at 305; *Horner*, 22 M.J. at 296. Such an opinion would invade the province of the court-martial and constitute unlawful command influence. *United States v. Sanford*, 29 M.J. 413, 415 (C.M.A.1990); *Ohrt*, 28 M.J. at 305.

We find no authority for trial counsel's novel theory for admission of the commander's and first sergeant's opinions based on some supposed future "impact on the unit." R.C.M. 1001(b)(4) allows a trial counsel to present evidence of "aggravating circumstances relating to or resulting from the offenses of which the accused has been found guilty." The discussion accompanying this provision provides that aggravation evidence may include evidence of "significant adverse impact of the mission, discipline, or efficiency of the command *directly and immediately resulting from the accused's offense.*" R.C.M. 1001(b)(4) Discussion (emphasis added). However, the trial counsel offered no evidence of *any* impact on the unit *resulting* from appellant's use of cocaine. Rather, what trial counsel did was disguise impermissible rehabilitative potential evidence as "impact" evidence.

Further, *Murphy* provides no authority for trial counsel's position. A close reading of that case reveals the holding was limited to finding a commander's testimony that he did not want the accused back in his unit was a permissible rehabilitative potential opinion distinguishable from impermissible opinions that accused should not be returned to duty anywhere in the Air Force. *See Ohrt*, 28 M.J. at 305; *Murphy*, 29 M.J. at 576. *Murphy* analyzed the commander's statement, using the tests of *Horner* and *Ohrt*, and determined that the statement, under the facts of *Murphy*, was admissible. *Murphy* did not provide alternative grounds, other than R.C.M. 1001(b)(5) rehabilitative potential, for admission of such testimony.

Although *United States v. Aurich*, 31 M.J. 95, 97 (C.M.A.1990) overrules *Murphy*'s attempt to distinguish a commander's opinion that he does not want the accused back in his unit, the framework of analysis applied by *Murphy* is still valid.

The majority in *Aurich* found a commander's opinion that he did not want an accused back in his unit to be generally inadmissible as an impermissible euphemism for a commander's recommendation to separate the accused with a punitive discharge. They stated that an accused should not receive a greater punishment merely because his commander does not want him, and that allowing a unit commander to testify that he did not want the accused back in his unit was "fraught with danger of undue and unlawful influence." If the opinion otherwise met the requirements of *Horner* and *Ohrt*, they would allow such an opinion only in rebuttal after the accused had called witnesses to testify they wanted him back in the unit. *Aurich*, 31 M.J. at 96–97. Judge Sullivan dissented from any per se inadmissibility of such an opinion. *Id.* at 100–101. Both the majority and the dissent considered the commander's statement as a rehabilitative potential opinion and applied an *Ohrt* and *Horner* analysis. *Id.* at 96–97 and 99–101.

■ Examining the testimony of Sergeant Berg and Major Hall, we find that neither individual's testimony qualifies as admissible testimony of appellant's rehabilitative potential. First, we agree with the majority in *Aurich* that, in most cases, a commander or first sergeant's opinion that he does not want the accused back in his unit is a euphemism for an impermissible recommendation for a punitive discharge. We note appellant was a technical sergeant with 20 years of service in the Air Force at the time of his court-martial. It is obvious that he was not a person who could be easily reassigned elsewhere on the base if his commander and first sergeant no longer wanted him in the unit. Therefore, under these circumstances, both Sergeant Berg's and Major Hall's testimony clearly sent an impermissible signal to the court members that appellant should be separated with a punitive discharge. *Aurich*, 31 M.J. at 97; *Kirk*, 31 M.J. at 89; *Cherry*, 31 M.J. at 5; *United States v. Antonitis*, 29 M.J. 217, 220 (C.M.A.1989); *Ohrt*, 28 M.J. at 305; *Horner*, 22 M.J. at 296.

■ Second, even if we applied a full *Horner* and *Ohrt* analysis to this case, Major Hall and Sergeant Berg's opinions would fare no better. Neither person's testimony showed "sufficient information and knowledge about the accused—his character, his performance of duty as a service member, his moral fiber, and his determination to be rehabilitated—to give a 'rationally based' opinion." *Ohrt*, 28 M.J. at 304. Also, it is readily apparent that Sergeant Berg's opinion was impermissibly based solely on appellant's conviction for cocaine use. *Cherry*, 31 M.J. at 5; *Kirk*, 31 M.J. at 88; *Horner*, 22 M.J. at 296.

Before leaving this subject, we note that testing the permissible scope of rehabilitative potential testimony under R.C.M. 1001(b)(5) is becoming a favorite pastime of trial counsel. Unfortunately, the indulgence in this pastime continues to provide military appellate courts with numerous *Ohrt* issues to review. We would all be better served by heeding the following:

> Notwithstanding the fact that RCM 1001(b)(5), Manual for Courts–Martial, United States, 1984, permits the Government to introduce, by way of opinion testimony, evidence of an accused's "rehabilitative potential," we believe it to be the rare case where it is necessary for the Government to introduce such opinions unless the accused places such potential in issue.... Having rehabilitative potential is a mitigating factor. Lacking rehabilitative potential is not an aggravating factor.... [I]f an offense does not ordinarily warrant a punitive discharge, then it would be inappropriate to award such a discharge to an accused because he "lacked rehabilitative potential." A court-martial is not an administrative discharge proceeding where members are discharged for unfitness or unsuitability for continued military service.

*Aurich*, 31 M.J. n. at 96–97; *see also United States v. Pompey*, 32 M.J. 547 (A.F.C.M.R.1991), *rev. granted* 32 M.J. 381 (C.M.A.1991).

■ Having determined that error occurred in the sentencing portion of appellant's trial, we must now decide whether to

give any relief. When impermissible evidence concerning an accused's rehabilitation potential is erroneously admitted, any prejudice occurring would be with respect to the determination of whether the accused is retained in the service or separated with a punitive discharge. If such improper testimony was admitted and the accused received a punitive discharge, there is at least a possibility of prejudice.

 In this case, the court members adjudged a punitive discharge. However, the convening authority commuted the bad conduct discharge to 12 months confinement. This action by the convening authority gave appellant a rehabilitative sentence and eliminated the prejudice that might have occurred to appellant from the improperly admitted sentencing testimony at his trial. Therefore, we find no remaining prejudice to appellant and grant no sentence relief.

We have examined the record of trial, the assignment of errors, and the government's reply and have concluded that the findings and sentence are correct in law and fact and the sentence is appropriate. Accordingly, the findings of guilty and sentence are

AFFIRMED.

RIVES and JAMES, JJ., concur.