**Patricia A. GAVIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–550C.

United States Court of Federal Claims.

Aug. 30, 2000.

Michael H. Selter, Washington, D.C., for plaintiff.

Lauren S. Moore, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., with whom were James M. Kinsella, Assistant Director, David M. Cohen, Director, and Frank W. Hunger, Assistant Attorney General, for defendant.

## *OPINION*

SMITH, Senior Judge.

This matter is before the court on defendant's Motion to Dismiss. Defendant contends that plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(4), or in the alternative, judgment should be granted upon the administrative record for the defendant pursuant to RCFC 56.1. After reviewing the briefs and hearing oral argument, the court hereby GRANTS defendant's motion.

## *FACTS*

Plaintiff, Patricia A. Gavin, is a former captain in the United States Air Force (USAF). In September 1991, while assigned to the Defense Information School, plaintiff complained of sexual harassment to her chain of command. The Inspector General (IG),

United States Army Soldier Support Center, Fort Benjamin Harrison, conducted an investigation into plaintiff's allegations. The IG report was published on March 6, 1992, and it concluded that two of plaintiff's sexual harassment claims were substantiated. Specifically, the IG report found that plaintiff's allegations of sexual harassment in the form of verbal comments and pictures were substantiated. However, a third allegation, inappropriate conduct in the form of personal relationships, was determined to be unsubstantiated.

On February 10, 1992, Captain Gavin applied for separation from the Air Force under the provisions of the Voluntary Separation Incentive/Special Separation Benefit (VSI/SSB) Program.[1] The application was approved on April 1, 1992, and on June 30, 1992, plaintiff was released from active duty and transferred to the USAF Reserves. As part of the VSI/SSB, plaintiff received a benefit payment in the amount of $36,356.76.

Plaintiff applied to the Air Force Board for Correction of Military Records (AFBCMR or the Board) on April 8, 1993, requesting removal of two documents from her personnel file, reinstatement to active duty, and promotion to major. The AFBCMR removed the two documents, a Company Grade Officer Performance Report and a Commander's Report of Disciplinary or Administrative Action, however the Board determined there was no error or injustice and denied plaintiff's request for reinstatement to active duty and promotion to major. On December 22, 1994, plaintiff filed a complaint in the United States District Court for the Southern District of Indiana, challenging the AFBCMR's denial of her request for reinstatement. The District Court granted Gavin's motion to dismiss her complaint without prejudice on June 30, 1995.

While performing reserve duty in Alabama, plaintiff was apprehended for operating a vehicle while intoxicated, and she received an Article 15, Nonjudicial Punishment, on January 26, 1996. After consulting with an attorney, plaintiff chose the nonjudicial punishment rather than a court-martial proceeding. She was fined $200.00. Plaintiff subsequently appealed the punishment, but the appeal was denied. On February 23, 1996, plaintiff acknowledged notification that the Article 15 would be filed in an Unfavorable Information File with the USAF.

Plaintiff filed her complaint on June 30, 1998, requesting that this court expunge the Article 15 written in January 1996 and the Reserve Officer Performance Report (OPR) for the time period of July 15, 1995 through July 14, 1996, which reflected this punishment. Ms. Gavin also requests that this court overturn the AFBCMR decision, reinstate her to active duty with back-pay, and promote her to the grade of major.

### DISCUSSION

Plaintiff's complaint asserts three claims. First, Ms. Gavin argues that she is entitled to reinstatement to active duty with back pay and promotion because her resignation was the result of government wrongdoing or coercion. Second, plaintiff seeks reinstatement to active duty with back pay and promotion because information was withheld from her, thus depriving her of the opportunity to withdraw her voluntary resignation. Lastly, plaintiff asks this court to defer its decision on her claims for expungement of her January 1997 OPR and her Article 15 conviction arguing that those claims would be moot if the court grants plaintiff's request for reinstatement.

### I. JURISDICTION

The Tucker Act grants this court jurisdiction over claims brought by members of the uniformed services for military pay or other compensation for services actually performed. *See* 28 U.S.C. § 1491(a)(1) (1994). The Act states in pertinent part,

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Consti-

---

**1.** *See* 10 U.S.C. §§ 1174a and 1175 (1994). Plaintiff submitted her Voluntary Separation Incentive paperwork on February 4, 1992 and signed an irrevocability statement on February 10, 1992. The irrevocability statement required written justification in order to withdraw the resignation.

tution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

◾ The Act, however, "does not create any substantive right enforceable against the United States for money damages.... The Act merely confers jurisdiction in the event that a substantive right to sue the Government already exists." *Berry v. United States,* 27 Fed.Cl. 96, 100 (1992) (citing *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Furthermore, the mere existence of jurisdiction does not necessarily confirm the court's ability to provide relief. *See Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). Not only must the court have jurisdiction, but the issue must also be justiciable. In order for a matter to be justiciable, it must be within the competency of the court. As the Federal Circuit stated in *Murphy,* "[j]usticiability is distinct from jurisdiction; it depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.'" 993 F.2d at 872 (quoting *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). The court in *Murphy* went on to state:

> Justiciability is a particularly apt inquiry when one seeks review of military activities. '[J]udges are not given the task of running the Army. The responsibility for setting up channels through which [ ] grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by separate discipline from that of the civilian.'

*Id.* (quoting *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)).

◾ It has been emphasized repeatedly that "judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct." *Murphy,* 993 F.2d at 873. However, "[a] court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion." *Id.* The AFBCMR's rulings are "subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

◾ There are limitations, however, to the types of military pay claims the court is allowed to adjudicate. For instance, the court is precluded from reviewing promotion decisions of various military selection boards. *See Strickland v. United States,* 36 Fed.Cl. 651, 655 (1996); *see also Murphy,* 993 F.2d at 872–73. Particularly, the substantive merits of military personnel decisions such as promotability, are nonjusticiable and are left to the discretion of military officials. *See Murphy,* 993 F.2d at 873. In addition, a voluntary resignation from the Armed Forces divests the court's jurisdiction over the retired or former officer's separation from the military. *See Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995); *Sammt v. United States,* 780 F.2d 31, 32–33 (Fed.Cir.1985). *See also West v. United States,* 35 Fed.Cl. 226, 230 (1996); *Brown v. United States,* 30 Fed.Cl. 227, 230 (1993), *aff'd,* 26 F.3d 139 (Fed.Cir.1994) (table decision).

## II. STANDARD OF REVIEW

RCFC 12(b)(4) authorizes dismissal of a complaint if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law. In ruling upon a motion to dismiss for failure to state a claim, "plaintiffs' allegations of fact will be both accepted and construed in the light most favorable to plaintiffs." *Blue v. United States,* 21 Cl.Ct. 359, 361 (1990); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is appropriate, however, when "it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

When the issue of jurisdiction has been raised in the context of a dispositive motion, it is the plaintiff who bears the burden of establishing the court's jurisdiction. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998); *Allen v. United States,* 46 Fed.Cl. 677, 680 (2000). The inquiry is appropriately directed to the party seeking relief under the power of the court. *See McNutt,* 298 U.S. at 189, 56 S.Ct. 780.

## III. ANALYSIS

### A. Reinstatement and Back Pay

On February 10, 1992, plaintiff applied for separation from the USAF under the provisions of the VSI/SSB Program. Her application was approved on April 1, 1992, and on June 30, 1992, plaintiff was released from active duty and transferred to the USAF Reserves. Plaintiff's voluntary separation from active duty divests this court of jurisdiction over her claims for reinstatement and back pay. *See Adkins,* 68 F.3d at 1321; *Sammt,* 780 F.2d at 33; *see also West,* 35 Fed.Cl. at 230; *Brown,* 30 Fed.Cl. at 230. Plaintiff claims, however, that her resignation was not voluntary because she was coerced into resigning from the USAF.

■■■ A presumption of voluntariness exists where an employee tenders her resignation; the plaintiff bears the burden of coming forward with evidence to demonstrate that her resignation was not voluntary. *See Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975). *See also McEntee v. United States,* 30 Fed.Cl. 178, 183 (1993), *aff'd,* 39 F.3d 1197 (Fed.Cir.1994) (table decision); *Longhofer v. United States,* 29 Fed.Cl. 595, 601 (1993). The presumption of Ms. Gavin's voluntariness can be rebutted by evidence demonstrating that: (1) the government wrongfully caused plaintiff duress or coerced her into resigning, *see Christie,* 518 F.2d at 587; or (2) plaintiff unsuccessfully attempted to withdraw her resignation before its effective date, *see Cunningham v. United States,* 191 Ct.Cl. 471, 423 F.2d 1379, 1384–85 (1970). The goal of this examination is to determine whether plaintiff had the ability to exercise free choice when she resigned. *See Scharf v. Dep't of the Air Force,* 710 F.2d 1572, 1574 (Fed.Cir.1983).

■■■ In order to show that plaintiff's resignation was the result of duress, she must demonstrate that: (1) she involuntarily accepted the government's separation offer; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of the government's coercive acts. *See Christie,* 518 F.2d at 587. In applying this test, duress or coercion is measured by an objective evaluation of all the facts and circumstances. *See id.* Based upon her own submission to the AFBCMR, dated April 8, 1993, plaintiff claims she resigned due to coercion experienced during "the investigation process." *See* Def.'s Reply to Pl.'s Supplemental Mem. in Opp'n to Def.'s Mot. for J. Upon the Administrative R. at 4. Therefore, for purposes of this motion, the court is limited, by plaintiff's own account, to the facts and circumstances alleged during the Inspector General investigation covering the months of December 1991 through February 10, 1992.

■■■ Focusing upon the time period in question, plaintiff's submission to the AFBCMR, entitled "Chronology of Events," does not contain a direct allegation of harassment or coercion on the part of the government. Instead, plaintiff's submission predominantly focuses upon concern for her husband and problems associated with a recent miscarriage. It was not until plaintiff responded to the Board's advisory opinion that she complained of harassment, threats of psychiatric incarceration, removal from her position without cause, and being forced to undergo a contract abortion. Any other instances of wrongful government conduct were not raised before the Board, and therefore those allegations are not available for this court to consider. *See Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984, 1000, *amended by,* 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct.

2961, 64 L.Ed.2d 837 (1980) (concluding that a service member cannot raise an issue on appeal to a court when she failed to raise it before an administrative agency competent to hear it). Upon examination of the "Chronology of Events," plaintiff does not mention threats of psychiatric incarceration in the months preceding her application to separate, nor does the chronology discuss a "contract abortion." Furthermore, plaintiff's claim of removal from her position without cause occurred in May 1992—three months after she submitted her application for voluntary separation.

Captain Gavin contends that she satisfies the *Christie* test and that *Roskos v. United States*, 213 Ct.Cl. 34, 549 F.2d 1386 (1977) controls the present case. However, plaintiff's reliance on *Roskos* is misplaced. In *Roskos*, a government employee resigned after he had been improperly reassigned to a distant city. The plaintiff retired claiming the reassignment "was hazardous to his health and a hardship to his family." *Roskos*, 549 F.2d at 1387. In concluding the resignation was involuntary, the court held that the reassignment was invalid and that "[t]he case thus falls within the principle that a resignation or retirement is vitiated if it results from coercive acts of the Government which leave the employee with no practicable alternative." *Roskos*, 549 F.2d at 1389 (footnote omitted).

In the present case, Captain Gavin did not apply to the VSI/SSB program in response to an USAF reassignment, rather she separated from active duty because of personal problems and an allegedly unsatisfactory work environment. The *Roskos* court pointed out that "not every unpleasant working arrangement or distasteful set of alternatives constitutes duress or renders an otherwise voluntary act involuntary." *Id.* Captain Gavin's situation appears more analogous to the circumstances present in *Sammt* and *Christie*, where a presumption of voluntariness cannot be overcome simply because plaintiff is confronted with "a choice of unpleasant alternatives." *Sammt*, 780 F.2d at 33. Specifi-

cally, plaintiff's "practicable alternatives" were waiting until the IG report findings were published or until her rotation ended before applying for the VSI/SSB program. The record for the period in question does not suggest that anyone forced or inappropriately coerced her to voluntarily apply to the VSI/SSB program. In fact, the voluntariness of plaintiff's decision is supported in her submission to the Board, that she accepted the lump sum bonus because she had no child support, no income, and no way to predict how long she would be in court with attorney fees. Therefore, plaintiff's reliance on *Roskos* is misplaced, and her allegations fail to meet the tripartite test set forth in *Christie*. Plaintiff's claim that her separation was due to duress or coercion lacks substantial merit.

As noted above, a voluntary resignation does not deprive this court of jurisdiction if the plaintiff unsuccessfully attempts to withdraw an application before the effective date. *See Cunningham*, 423 F.2d at 1382–85. Plaintiff claims that because she did not receive the IG report until March 1993, she lacked proper written justification to support the withdrawal of her voluntary separation application.[2] The facts, however, demonstrate that plaintiff was briefed on the IG report findings in March 1992, and she could have withdrawn her separation application before it was approved on April 1, 1992. Furthermore, there is nothing in the record stating that only the IG report itself would have served as justification to withdraw her separation application. Plaintiff cannot be granted relief simply because she failed to educate herself as to the withdrawal procedure for a VSI/SSB application. As this court has stated, "[i]gnorance of the law is not accepted as an excuse for failure to comply." *Gallucci v. United States*, 41 Fed.Cl. 631, 642 (1998) (quoting *Heaphy v. United States*, 23 Cl.Ct. 697, 703, *aff'd*, 972 F.2d 1355 (Fed.Cir.1992)).

Therefore, plaintiff's claim for reinstatement and back pay must be dismissed for lack of jurisdiction. Furthermore, even if plaintiff's claim satisfied the jurisdictional re-

---

2. Plaintiff's duress or coercion claim is undermined by her indication that she would have withdrawn her separation application had she

received the IG report validating the existence of the harassment in a timely manner.

quirements of this court, judgment would be entered for the defendant upon the administrative record because the AFBCMR's decision was supported by substantial evidence and was not arbitrary, capricious, or contrary to law or regulation.

### B. Promotion

 Plaintiff requests that this court promote her to the grade of major, or in the alternative, allow her to amend her complaint to seek review by a Special Selection Board (SSB) without consideration of her June 1992 OPR or January 1997 OPR. It is well settled that the Secretary of the Air Force, not this court, has the responsibility to recommend or select individuals for promotion in the Air Force. *See Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). Therefore, plaintiff's request that this court grant a promotion to major is a nonjusticiable matter. *See Voge v. United States*, 844 F.2d 776 (Fed.Cir.1988), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988) (holding that claims for special professional pay and retroactive promotion are nonjusticiable).

In arguing that the court does possess jurisdiction over plaintiff's promotion request, plaintiff, citing *Porter*, asserts that the "Board's decision denying Plaintiff's request for promotion was inextricably tied to its decision denying Plaintiff's request for reinstatement with back pay." Pl.'s Supplemental Mem. in Opp'n to Def.'s Mot. to Dismiss or in the Alternative for J. Upon the Administrative R. at 22. Plaintiff's argument for jurisdiction on this matter is misplaced. In *Porter v. United States*, the Federal Circuit upheld the AFBCMR's decision to refer a lieutenant's record to a SSB on the promotion issue, without voiding previous passovers from the record. 163 F.3d 1304 (Fed. Cir.1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999). The court in *Porter* did not direct the reviewing board to promote the lieutenant. Contrary to plaintiff's contention, *Porter* does not stand for

the proposition that this court has jurisdiction over military promotion decisions.

In the alternative, plaintiff seeks to amend her complaint to allow a SSB to reconsider her promotion without consideration of the June 1992 OPR or January 1997 OPR. Plaintiff claims that the original selection board considered inappropriate material when denying her promotion to major. The record indicates, however, that her evaluation form for the period August 1, 1991 to May 31, 1992, did not include the June 1992 OPR because it had been removed by an Order of The Secretary of the Air Force. Likewise, plaintiff has failed to allege a substantive procedural error that would justify the removal of her January 1997 OPR and reconsideration by a SSB. Even if her complaint was amended, the record does not support a claim upon which relief can be granted, therefore, plaintiff's request is denied.

### C. Expungement of the Article 15 and the January 1997 Officer Performance Report

Plaintiff requests this court to defer its decision on expungement of the Article 15 and January 1997 OPR because she believes this claim will be moot if she is reinstated to active duty. However, plaintiff fails to point to any case law to support such a conclusion. In addition, plaintiff does not seek monetary compensation, nor allege any procedural defect regarding the Article 15 or OPR.

 A claim for expungement of an Article 15 may present a claim cognizable under this court's jurisdiction only if the Article 15 itself resulted in a reduction in pay. *See Wales v. United States*, 14 Cl.Ct. 580, 593–94, *aff'd*, 865 F.2d 268 (Fed.Cir. 1988) (table decision). In this case, plaintiff's Article 15 resulted in a one-time forfeiture of $200.00, but she has not made a claim for money damages specifically related to the Article 15 or the OPR. Therefore, the requested relief is not incident and collateral to a monetary judgement and falls outside of this court's authority. *See* 28 U.S.C. § 1491(a)(2) (1994).[3]

---

**3.** The statute states, in pertinent part:
 [t]o provide an entire remedy and to complete the relief afforded by the judgment, the court

may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appro-

In *Voge*, the Federal Circuit noted that "[a] controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" 844 F.2d 776, 780 (Fed.Cir.1988) (citing *Greene v. McElroy*, 254 F.2d 944, 953 (D.C.Cir.1958)), *rev'd on other grounds*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). The OPR and Article 15 are discretionary, military personnel decisions that lack meaningful review standards, and therefore they are not subject to judicial review. *See Murphy*, 993 F.2d at 873.

Plaintiff does not allege any procedural error in the administration of the Article 15 or OPR, therefore these claims must be dismissed. *See Nishitani v. United States*, 42 Fed.Cl. 733, 737–38 (1999) (concluding that a plaintiff must cite regulation or procedure, other than general guidelines, for claim to be justiciable). Moreover, when personnel decisions are challenged procedurally, the potential remedy is reconsideration under proper procedures, not an expungement of the decision. *See Wales v. United States*, 14 Cl.Ct. at 593–94. In this instance, the only possible remedy, reconsideration by the AFBCMR, is unavailable because plaintiff has not alleged a procedural error or presented justiciable claim. Accordingly, the court grants defendant's motion to dismiss plaintiff's request to expunge the Article 15 and OPR because it raises a nonjusticiable issue.

### CONCLUSION

In light of plaintiff's voluntary separation, the court lacks the requisite jurisdiction for entertaining plaintiff's claims for reinstatement and back pay. As for plaintiff's requests for promotion and expungement, these matters constitute nonjusticiable issues. For the foregoing reasons, the court hereby GRANTS defendant's Motion to Dismiss. Accordingly, the Clerk of the Court

priate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

shall DISMISS plaintiff's claim and enter judgment for the defendant.

**IT IS SO ORDERED.**

